# IN RE BEDFORD'S APPEAL.

### PATENTS; ANTICIPATION.

1. The similitude in the invention relied on as anticipating the invention for which a patent is sought, need not be exact in form or structure; but if the information contained therein is full enough and sufficiently precise to enable any person skilled in the art to which it relates, to perform the process or make the device covered by the claim of invention sought to be patented, it will be sufficient to establish the fact of anticipation and want of novelty in the alleged invention.

2. A claim for a compound bar for making cutting tools, consisting of an inner bar of harder metal and an enclosed bar of softer

metal, pressed on the same, etc., contains nothing patentably new, in view of a patent which shows a bar of hard steel surrounded or partly surrounded by a bar of softer steel, and another patent which shows a bar for cutting blades made by partly surrounding the hard steel by iron.

3. Evidence in support of such a claim, that a protest made in the Imperial German Patent Office against a claim filed therein for a patent founded upon the same invention, upon the ground that the invention was already known, was overruled and it was held by that office that there was novelty in the claim, will not avail the applicant in the United States Patent Office, where it appears that the German Patent Office had none of the references before it which the Patent Office here had.

No. 121. Patent Appeals. Submitted January 11, 1899. Decided March 8, 1899.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. H. Babcock* for the appellants.

*Mr. W. A. Megrath* for the Commissioner of Patents.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is from a decision of the Commissioner of Patents refusing to grant a patent to the appellants, Joseph Bedford and Joseph Ashton, upon an application filed by them claiming an invention of a compound bar for making cutting-tools. The application was filed on the 8th of November, 1897.

The appellants are subjects of Great Britain, residing at the city of Sheffield, England. As ultimately formulated, they presented two claims, though substantially but one; and the claims as finally acted upon in the Patent Office are as follows:

"1. A compound bar for making cutting-tools, consisting of an inner bar of harder metal and an inclosing bar of softer metal pressed on the same, the inner bar being of lesser width

at its front than at one or more inner points, in order that the material of the outer bar may resist withdrawal of the inner bar and the compound bar may be practically in one piece substantially as set forth.

"2. A compound bar consisting of an inner bar of harder material having recesses in its sides, and an outer bar of a softer material which is channeled to receive the said inner bar and rolled or otherwise forced into the said recesses substantially as set forth."

The first of these claims was substituted, upon cancelation of a former claim for a method or process of forming a compound bar of metal, suitable for making cutting-tools, etc. The claim as now presented is for the production of an article of manufacture, being a compound bar consisting of an inner bar of harder metal and an enclosed bar of softer metal pressed on the same, etc.

All the tribunals of the Patent Office held that the claims, as finally presented, contained nothing that was patentably new in view of the references furnished. The decision of the Commissioner was made on the 19th of October, 1898.

The appellants, in their specification, describe their invention thus:

"Our invention relates to the production of bars composed of a superior quality of cast-steel inclosed or partially surrounded by a greater body of a cheaper steel or iron to give the requisite support and firmness to the higher-grade steel when put into use as a tool. The principal object is to provide a tool of maximum grade or quality at a minimum cost of material and labor. To carry our invention into effect, we make from the requisite quality of cast-steel a comparatively small bar of any desired shape or section which may be, say, square, flat, double bevel or trapeze form, with or without grooves, hollows or cavities formed upon the sides. Likewise from a relatively inferior quality of tough steel or iron we produce a larger bar of say a square or flat section and sink in one of its sides, corners or edges a groove or

grooves or recess of suitable size and shape to receive the bar of cast-steel, which last-mentioned bar we place within the said groove while the larger piece is still hot, or they may be put together with both bars cold, in which case the compound bar is to be put into a furnace.    In either case the bar is to be finished by pressure of rolls or by hammering in manner ordinarily practiced for tool-bars.    The compound bar so produced is then ready for cutting up and may be fashioned and tempered for the class of work to be done practically as if from an ordinary bar of steel."

The patents cited as references and upon which the claims of the appellants were rejected for want of novelty, were the patents issued to Potter, August, 1867;  Leighton, March 10, 1868;  Emerson, September 21, 1875; Seaman, May 22, 1888; Kraatz, October 13, 1891, and Rodig, July 23, 1895.

It will not be necessary to state the claims and specifications in each of these references ;  but we shall state generally what those most pertinent to the present case would seem clearly to cover by way of anticipation.    The similitude in the invention relied on as matter of anticipation, with the invention for which a patent is sought, need not be exact in form or structure.    But if the information contained therein is full enough and sufficiently precise to enable any person skilled in the art to which it relates, to perform the process or make the thing covered by the claim of invention sought to be patented, it will be sufficient to establish the fact of anticipation and the want of novelty in the alleged invention.    And applying this principle to the case under consideration there would seem to be no sufficient novelty in the claims of the appellants to entitle them to a patent thereon. Indeed, the construction of compound bars or ingots for the making of cutting-tools, consisting of an inner bar of hard metal and an outer bar of softer metal, enclosing or partly enclosing the inner bar, was well known and understood long before the appellants disclosed their invention.

The patent to Seaman, also a British subject and a citizen

of Sheffield, England, shows ingots or bars for tools, one species showing a bar of hard steel, surrounded or enclosed by a bar of softer steel, and another species showing the hard steel bar only partly surrounded by the other steel. The patentee describes his invention as follows:

"The self-hardening or air-hardening steels have the serious drawbacks of being very difficult to forge from the ingots into bars, and even dangerous to forge from large bars into tools, as their peculiar nature makes them very susceptible to overheating or unskillful heating. The object of my invention is to remedy this difficulty by protecting the very hard special steel with a surrounding of tougher ordinary steel that is less easily injured by heating, and this surrounding has the further decided advantage of giving the hard steel great support, and so preventing the bars snapping in pieces under the forge-hammer, as at present is often the case when the bars have been slightly flawed during the process of forging down the ingots, and my invention will greatly prevent such flaws being made. This combination of a steel having sufficient density and hardness to enable the usual process of water-hardening to be dispensed with, and from which the cutting edge of the tool is to be made, with a covering or support of tough, strong steel is of decided public utility—first, in reducing the cost of producing engineers' and other tools having a cutting edge of self-hardening steel; second, in the increased resilience of such tools; and, third, the increased strength and reliability and consequent safety in the use of such tools.

"The two kinds of steel may be combined either by pouring molten milder steel around an ingot of self-hardening steel or by pouring molten self-hardening steel into a suitable recess in an ingot of mild tough steel, or otherwise by forming the compound ingot in an ordinary 'lump mold' in a steel-melting furnace, or by 'teeming' or pouring the two steels simultaneously into a mold suitably divided by a

diaphragm of sheet-iron, which affords a better welding between the two dissimilar metals."

The patent issued to Kraatz also shows bars for cutting-blades made by partly surrounding the hard steel by iron, and in the specification pertaining to this patent the prior state of the art is fully described thus:

"Prior to my invention iron cutting-blades with steel cutting edges have generally been made by first forging an iron bloom or pile to the desired length and width. This bloom or pile is then taken and a recess is planed or otherwise formed therein for the reception of the bar of steel which is placed therein. The iron and steel are then welded together in a forge, usually a 'smith-forge' as it is known to the trade, either by hand or by means of a power-hammer or drop. In carrying out such a process it is necessary to reheat the bloom or pile several times before the iron and steel are welded together. The principal objections to this well-known process are that the weld is often imperfect and that a great deal of time and labor are consumed in planing the groove and in forging the bloom or pile. By the use of my invention, which will now be described, all of these objections are overcome.

"I first build up a 'pile' of iron pieces or bars in such a manner as to leave a recess for the reception of the steel bar. In this way I overcome the necessity of planing a recess in the bloom, as in the old process. The various pieces or bars which compose the pile consist, preferably, of plates or layers of rerolled or puddled iron, which can be made very economically from many sources, such as from ordinary railroad rails or otherwise. After the pile has been built up as I have just described it is placed in an ordinary heating furnace of any approved construction, and it is then brought to a welding heat, which can be determined by any one skilled in the art to which my invention relates. While the iron pile is being heated in the furnace the steel is brought to a cherry-red heat in any convenient or usual

manner.  The two metals are now in the proper condition and
of the proper heat for the application of the flux or welding
compound, which is applied to the recess in the iron pile,
and the steel bar in its heated condition is then immediately
placed in position therein.  The pile is now complete and
is allowed to remain in the furnace until the color of the
steel indicates that it has reached a proper welding tempera-
ture.  The completed pile is now quickly withdrawn from
the furnace and passed between suitable power-rolls, by
which it will be reduced to the proper size and shape.  In
practice it has been found that *the pressure of these power-rolls
is sufficient to effect a thorough welding and combination between
the iron and the steel.*

"My improved method of making cutting-blades by pass-
ing a pile through power-rolls is capable of being performed
more economically and more cheaply than by hammering
and heating as heretofore practiced, and by reason of the
equality of *pressure of the power-rolls* the consequent welding
is very uniform."  The italic marks are ours.

In the first claim of the appellants the fitting of the inner
bar in the outer bar is done in the form of a dovetail; but
there is nothing new in the expedient of a dovetail as a
means of holding one piece of metal to another; and the
patent to Rodig, granted in 1895, exemplifies several modes
or forms of such dovetail or fastenings of one piece of metal
to or in another, in order that the two or more pieces may
be welded together by the application of heat and the pressure
of rollers.  And in Leighton's patent the specification says
that "in case of an imperfect weld, in rolling the rail,
the steel is not only well wrapped around the head of the
rail, but is held firmly in place by the dovetail-shaped end
above described."

The second claim of the appellants is substantially the
same as the first, the only difference being that, instead of
claiming, as in the first claim, that the inner bar is of less
width at the front than at one or more inner points, the

second claim calls for recesses in the sides of the inner bar, and to produce the fit and to furnish the hold upon the inner bar, the outer bar must be channeled to receive the inner bar, and the material of the outer bar must be rolled or forced into such recesses of the inner bar. This is fully covered by the patents referred to, and especially by that issued to Rodig.

In view of the references made, we entirely agree with the tribunals of the Patent Office, that there is no patentable novelty in the alleged invention of the appellants. All the officials in the Patent Office, without apparent hesitation or doubt, have concurred in holding that there is no such novelty in the claims made in the present application as to entitle the applicants to a patent; and there is no such error apparent, of either law or fact, in respect of which this court can reverse the judgment.

The appellants have filed in this case, at the argument, under stipulation of counsel, a transcript of an application made to the Imperial German Patent Office for a patent, founded upon the invention claimed in this case. The claim made in that case was for "a method for making steel bars for tools and the like, by combining two bars of different grades of steel in the manner that a smaller bar of superior cast-steel is inserted in a bar of inferior steel or iron and joined with the latter by heating."

There was a protest entered to this claim by Friedrich Krupp, of Essen, upon the ground that the method of producing such compound bar was already known; but the Imperial Patent Office, on the 4th of October, 1898, overruled the protest, and held that there was novelty in the claim. That office, however, had none of the references before it that the Patent Office here had; and therefore it is impossible to say what would have been the ruling of the German Office, if it had had the knowledge of the references in the light of which the case was decided in the Patent Office here. The action of the German Office therefore can

have no influence upon the determination of the present case.

We must affirm the decision of the Commissioner of Patents, and direct that the proceedings and opinion of this court be certified to the Patent Office, as required by law; and it is so ordered.                            *Judgment affirmed.*